UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

      Plaintiff,

v.                                Case No. 18-20765

Kevontae Nathaniel Lee,

                                  Sean F. Cox
      Defendant.                United States District Court Judge

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

Defendant Kevontae Lee moved to suppress the evidence obtained during his initial traffic stop, arguing that the deputies lacked probable cause to initiate the stop, that the officers did not conduct a proper inventory search, and that the officers did not conduct a proper search incident to his arrest. For the reasons below, the Court will deny Lee's motion.

## BACKGROUND

On November 13, 2018, a grand jury indicted Lee on one count of felon-in-possession of a firearm. (ECF No. 12). On December 21, 2018, Lee filed this motion to suppress. (ECF No. 18). The Court held an evidentiary hearing on February 8, 2019.

At the hearing, the Government called one witness, Sergeant Eric Hix of the Oakland County Sheriff's Office. It also introduced three exhibits: a dash-cam video of the stop, the van's impound slip, and a copy of the Office's impound/inventory policy. Lee called one witness, his girlfriend Justice Andrews, and offered one exhibit, a map of the area where the stop occurred.

Now, having heard and observed the witnesses who testified at the evidentiary hearing,

1

allowing for the Court to assess credibility, having considered the exhibits submitted by the parties, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law.[1]

## FINDINGS OF FACT

On October 8, 2018, Hix and his partner, Deputy Charles Janczarek, were on a routine patrol in a residential area of Pontiac, Michigan. The deputies observed a black van speed away from them after failing to stop at a stop sign. Based on visual approximations and the speed that the deputies needed to drive to catch up to the van, Hix estimated that the van was traveling 40 to 45 miles-per-hour (roughly 20 miles-per-hour above the speed limit for that area).

The van pulled into the driveway of a house and the deputies initiated a traffic stop. Hix approached the driver's side of the vehicle and Janczarek approached the passenger's side. The driver, Lee, attempted to get out of the van, but Hix told him to "stay in the car."

Hix said, "Dude, your fucking brakes are like smoking, man. Why you going so fast?" Lee replied, "I ain't going fast."

Hix then asked for Lee's driver's license. Lee stated that he did not have a license. Lee told Hix that "I was going to my auntie's crib" and gestured down the road. At this point, Hix determined that Lee had "grabbed" this driveway at random and that he did not have any connection to the house.

Hix asked Lee if he had any guns, drugs, or outstanding warrants. Lee answered "no" to all questions. Hix said, "Okay, then you'll be straight."

---

[1]To the extent that a finding of fact is more properly a conclusion of law, and to the extent that a conclusion of law is more properly a finding of fact, it should be so construed.

Hix ordered Lee to get out of the van and place his hands against its side. After Lee expressed some exasperation, Hix stated, "I'm not gonna sweat you for no license." Hix began handcuffing Lee.

When Lee asked why he was being arrested, Hix responded, "For speeding. Driving like an asshole." Moments later, Hix stated, "You're being detained because you are under arrest for driving without a license."

Hix took Lee to the patrol car, and Janczarek began searching the van. When Hix returned to the van, Janczarek stated, "There's gotta be something here." Moments later, the deputies found "a gun and dope."[2]

Shortly after the deputies began searching, a woman came out of the house. The deputies asked if she knew Lee. She did not. The woman stated that she needed to leave and asked about the van. Hix stated, "It's going to be impounded."

As the deputies searched, one of them stated, "Yeah, those are his boys right next door."

When two other deputies arrived on the scene and asked why Lee was stopped, Hix replied, "it was him doing about 60 miles per hour down Jessie to get away from us that got him."

Hix then said, "His boys are two doors down, three guys."

As the deputies searched, Hix said "I thought there'd be more than that. More than just that marijuana and gun."

Eventually, Hix drove off with Lee, and the other deputies waited for the tow truck to arrive. Two days later, Lee was charged with felon-in-possession of a firearm.

---

[2]Ultimately, the search uncovered a semiautomatic handgun, 42 grams of marijuana, a digital scale, and $1,623. (ECF No. 18-2, PageID 51).

**CONCLUSIONS OF LAW**

Lee raises three arguments in his motion to suppress. First, he argues that the deputies did not have probable cause to justify the initial stop. Second, he argues that they did not conduct a proper inventory search because (a) there was no need to impound the van, (b) the search was not done according to standardized procedures, and (c) the search had an improper investigatory purpose. Third, he argues that the search cannot be justified as a search incident to arrest.

## I.     Probable Cause for Stop

An ordinary traffic stop by a police officer is a "seizure" within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Accordingly, any evidence seized during an illegal traffic stop must be suppressed as "fruits of the poisonous tree." *United States v. Hill*, 195 F.3d 258, 264 (6th Cir.1999) (quoting *Wong Sun v. United States*, 371 U.S. 471, 484 (1963)). To justify a traffic stop for a civil infraction, an officer must have probable cause. *Gaddis v. Redford Twp*., 364 F.3d 763, 771 n. 6 (6th Cir.2004). "So long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment, regardless of whether this was the only basis or merely one basis for the stop." *United States v. Gaskin*, 587 Fed.Appx. 290, 293 (6th Cir. 2014) (internal quotations omitted).

Lee argues that "[i]n this case, the officers provided varying accounts of why they stopped Mr. Lee, and the dash cam video is not clear." However, Hix testified that he saw Lee drive roughly 20 miles-an-hour over the speed limit and fail to stop at a stop sign. The Court finds this testimony to be credible. Further, the dash cam footage appears to show Lee speeding through a residential area and failing to stop at a second stop sign. Thus, the Court finds that the deputies had probable

cause to believe that Lee had committed a civil traffic infraction.  The stop was justified.

## II.       Inventory Search

A valid inventory search conducted without a warrant is a well-defined exception to the Fourth Amendment's warrant requirement. *Colorado v. Bertine*, 479 U.S. 367, 371-74 (1987). Inventory searches are justified because they "serve to protect an owner's property while it is in the custody of police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Id.* at 372.

A warrantless inventory search may be conducted only when the police have "lawfully tak[en] custody of the vehicle." *United States v. Hockenberry*, 730 F.3d 645, 658 (2013).  The Government has the burden of proof to justify a warrantless inventory search. *Coolidge v. New Hampshire*, 403 U.S. 443, 445 (1971).  The inventory search must be conducted "according to standard police procedures" and be "sufficiently tailored to only produce an inventory." *United States v. Jackson*, 682 F.3d 448, 455 (6th Cir. 2012).  The search must be conducted in good faith and must not be undertaken as a pretext for a criminal investigation and to discover evidence of criminal activity. *South Dakota v. Opperman*, 428 U.S. 364, 376 (1976).  In conducting an inventory search, officers must follow the applicable policy, but the presence of an investigative purpose or their suspicion that they may find contraband during the search does not invalidate an otherwise proper inventory search. *United States v. Lumpkin*, 159 F.3d 983, 987 (6th Cir. 1998) (citations omitted).

### a.       Unnecessary Impound

Lee first challenges the validity of the search by arguing that the deputies did not need to impound the van because his friends and family were nearby.  Andrews testified that she was across

the street for at least part of the search and that Lee's aunt told her that she had asked to drive the van away from the scene. Lee argues that, because the deputies did not explore the possibility of finding an alternative driver, the Government cannot show that the inventory search was necessary.

To support his argument, Lee cites *United States v. Pappas*, 735 F.2d 1232 (10th Cir. 1984), in which the Tenth Circuit affirmed the trial court's decision to suppress evidence found during an inventory search because the defendant's friends were on the scene. In this case, however, the deputies were never confronted by anybody who was willing and able to take possession of the van.[3] Instead, the dash cam video merely shows that the deputies suspected that some people, a few houses away, might know Lee. Lee provides no support for the proposition that an officer must take affirmative steps to find an alternative driver before deciding to impound a car. *Cf. United States v. Kimes*, 682 F.3d 448, 454 (6th Cir. 2012) (concluding that no authority required officers to "take[] it upon themselves" to call the defendant's wife to pick up the car).

b.      **Standardized Procedure**

The Government admitted a copy of the Oakland County Sheriff's Office impound/inventory policy, which states that an officer may provide for the immediate removal of a car if "there is reasonable cause to believe that the vehicle was used in the commission of a crime." (ECF No. 20-1, PageID 71). In Michigan, operating a vehicle without a valid driver's license is a misdemeanor. M.C.L.A § 257.904. Because Lee was arrested for driving the van without a license, the decision to impound the van complied with the Office's standardized procedure.

---

[3]Andrews testified that Lee's aunt told her that she had asked the deputies to allow her to drive the van away from the scene. The Court does not find this testimony to be credible. Even if this statement is true, however, the dash cam footage shows that this interaction did not occur anytime before Hix and Lee left the scene. Thus, the gun and drugs would have been found during the inventory search regardless of any attempted intervention by the aunt.

Moreover, the policy states that an officer may provide for the immediate removal of a car if "the vehicle is hampering the use of private property by the owner or person in charge of that property or is parked in a manner which impedes the movement of another vehicle." (ECF No. 20-1, PageID 71). During his initial conversation with Lee, Hix formed the belief that Lee did not have any relationship with the owner of the property to which the driveway was connected. The parked van was hampering the use of private property. Thus, there was a second, independently valid reason to impound the van.

Oakland County also provides procedures for how its deputies should conduct inventory searches:

- Any Deputy impounding or towing any vehicle shall visually inspect the contents of all vehicle compartments and the contents of all closed containers located in the vehicle

- Locked containers and/or compartments shall be opened only after receiving supervisory permission. Minimal force causing minimal damage shall be utilized to force open any locked compartment and/or container.

- The "Vehicle Impound Slip" shall be throughly completed. All items of value or uniqueness shall be specifically recorded. Any item of extreme value shall be removed and appropriately tagged into Property for safekeeping. Any area of damage will be specifically recorded.

- Any item or immediate danger located shall be immediately disposed of in a safe and appropriate manner.

- Any evidence, contraband, fruits of a crime or forfeitable property encountered during the inventory/inspection shall be seized and appropriately tagged into Property. An incident report shall be written any time items of this nature are seized.

(ECF No. 20-1, PageID 72).

Here, the dash cam video shows that the deputies performed a thorough, visual inspection of the van. Government also provided the completed vehicle impound slip. Although this slip is

7

not particularly detailed, Hix testified that the van was "clean" (i.e. there was no noteworthy personal property in the van). Further, Janczarek's incident report details the evidence seized from the van. (ECF No. 18-2, PageID 51-52). Thus, the Court concludes that the search was consistent with the Office's standardized procedures.

### c. Improper Investigatory Purpose

Lee also argues that the "officers' report and comments on the dash cam video make clear that they conducted the search for the purpose of investigation." However, "it is only when a vehicle is searched *solely* for the purpose of investigating criminal conduct that the validity of the search will be dependent on the application of the probable cause and warrant requirements of the Fourth Amendment." *United States v. Dowl*, 229 F.Supp.3d 603, 611 (E.D. Mich. 2017) (citing *Bertine*, 479 U.S. at 371) (emphasis in original).

Despite the deputies' comments, this search was done to inventory the van's contents in preparation for it being impounded. Thus, it was not done solely for investigatory purposes.

### III. Incident to Arrest

Lee argues that this search cannot be justified as a search incident to arrest. Because the Court concludes that the deputies executed a valid inventory search, the Court need not address this argument.

### CONCLUSION

For these reasons, the Court DENIES Lee's motion to suppress.

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: February 20, 2019